710 F.2d 504
 36 UCC Rep.Serv. 545
 Robert BUTTS, Trustee in Bankruptcy of Summit Creek Plywood
Company, Plaintiff- Appellee,
v.
GLENDALE PLYWOOD CO., and Davidson Lumber Sales, Defendant-Appellants,
and
Walter E. Heller Western, Incorporated, Defendants.
 No. 82-3041.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 3, 1983.
Decided June 16, 1983.
 
 Elizabeth L. Perris, McMenamin, Joseph, Babener, Greene & Perris, Portland, Or., Douglas Beckman, Black, Kendall, Tremaine, Boothe & Higgins, Portland, Or., for plaintiff-appellee.
 Jeffrey D. Herman, Wiswall, Svoboda, Thorp & Dennett, Springfield, Or., for defendants-appellants.
 Appeal from the United States District Court for the District of Oregon.
 Before FERGUSON, BOOCHEVER and NORRIS, Circuit Judges.
 NORRIS, Circuit Judge:
 
 
 1
 The question presented by this appeal is whether Glendale Plywood Co. (Glendale) had the right to stop a shipment of plywood to Summit Creek Plywood Company (Summit Creek) after Summit Creek resold the plywood to a third party and ordered its destination changed. The district court held that, under Sec. 2-705 of the Uniform Commercial Code, the redirection of a shipment at the order of a buyer, without the seller's knowledge, constitutes a reshipment that cuts off the seller's right to stop the goods in transit. We affirm.
 
 
 2
 * Summit Creek ordered two railroad carloads of lumber from Glendale Plywood in March, 1978. On April 15, Glendale was instructed to ship the cars to "Summit Creek Forest Products, Murray, Utah." On April 17, Glendale shipped the cars. The railroad issued a bill of lading showing Glendale as the shipper, Summit Creek as the consignee, and Summit Creek at Murray, Utah as the destination. On April 19, while the goods were in transit, Summit Creek sold its interest in the lumber to Davidson Lumber Sales (Davidson). At the request of Summit Creek, the railroad changed the waybills to show Summit Creek as the shipper, Davidson as the consignee, and Davidson at Murray, Utah as the destination. Summit Creek then sold this account receivable from Davidson, and others, to Walter E. Heller Western, a factoring agent.
 
 
 3
 The railroad, following Summit Creek's instructions, sent the cars on their way to Davidson at Murray. On April 28, having learned that Summit Creek might be insolvent and before the cars had reached Murray, Glendale ordered the railroad to stop both cars. The railroad complied with Glendale's orders and Glendale then sold the lumber directly to Davidson. The lumber was delivered to Davidson at Murray on May 3.
 
 
 4
 On May 3, Summit Creek was adjudicated a bankrupt. Thereafter, Summit Creek's trustee in bankruptcy sued Glendale, claiming it had no right to stop the shipment. The bankruptcy court held for Glendale. The district court reversed, holding that Glendale was not allowed to stop the shipment and that Summit Creek, not Glendale, was entitled to payment from Davidson. Glendale appeals. The only issue on appeal is whether, under Sec. 2-705 of the Uniform Commercial Code, Glendale had the right to stop the shipment while it was in transit.
 
 II
 
 5
 Section 2-705 of the Uniform Commercial Code provides that:
 
 
 6
 (1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (Section 2-702) and may stop delivery of carload, truckload, planeload or larger shipments of express or freight when the buyer repudiates or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.
 
 
 7
 (2) As against such buyer the seller may stop delivery until
 
 
 8
 (a) receipt of the goods by the buyer; or
 
 
 9
 (b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or
 
 
 10
 (c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman;
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 U.C.C. Sec. 2-705, Or.Rev.Stat. Sec. 72.7050 (1981). The dispute in this case is whether the railroad's redirection of the cars from Summit Creek to Davidson at Summit Creek's request constituted a reshipment which cut off Glendale's right to stop delivery under Sec. 2-705(2)(c). The legal question we must thus decide is whether a re-routing of a shipment from a purchaser to a subpurchaser (a buyer from the original purchaser) upon the instructions of the purchaser and without the knowledge of the seller should constitute a reshipment under Sec. 2-705(2)(c). We hold that it should.
 
 
 14
 The purpose of Sec. 2-705(2)(c) is to protect transactions between original buyers and subpurchasers. See Interlake, Inc. v. Kansas Power & Light Co., 79 Ill.App.3d 679, 685-86, 34 Ill.Dec. 954, 959, 398 N.E.2d 945, 950, 28 U.C.C.Rep. 689, 695-96 (1979). Section (2)(c) protects a subpurchaser from being affected by disputes between the buyer and the seller by ensuring that the goods he orders are delivered regardless of the financial condition of his seller (the original buyer). Whether the original seller has knowledge of the transaction between his buyer and the subpurchaser has no effect on the subpurchaser's need for protection. To read into Sec. 2-705 a requirement of seller knowledge or permission for reshipment would endanger subpurchasers and discourage resale transactions of the sort conducted here.[1]
 
 
 15
 Moreover, defining reshipment as the point at which the seller's right to stop shipment ceases provides a time at which the rights of all parties are fixed. Disputes between sellers, buyers, and subpurchasers as to whether permission was ever granted or what the seller intended in his grant of permission, which would result if the seller's permission was required to reship, are avoided.
 
 
 16
 We find unpersuasive Glendale's argument that the rule we adopt today will cause sellers to demand payment before shipment in order to ensure that they will be paid. While it is true that our interpretation of Sec. 2-705 gives the buyer the power, by reshipping, to cut off the seller's right to stop shipment, the seller's right to stop transit is cut off once the goods are received by the buyer in any event. In most instances the seller has not been paid at this point and still runs the risk of being unable to collect. Yet sellers have not, as a response, shipped only on a C.O.D. basis. There is no reason to believe that they will begin demanding prepayment under our interpretation of Sec. 2-705(2)(c).[2]
 
 
 17
 The interpretation of Sec. 2-705 adopted by the district court is consistent with the goals of predictability in commercial transactions and providing protection for buyers and sellers alike. The judgment is thus
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Glendale argues that, while Sec. 2-705 is designed to protect subpurchasers, the subpurchaser here needed no protection because he was able to buy the goods directly from the seller when shipment was stopped. It is true that the subpurchaser in this case was able to mitigate his damages by buying from the seller (though we do not know at what price). However, that may not be the situation in other cases, for example when the subpurchaser has already paid his seller (the buyer). To allow the seller to stop transit after the buyer has made a bargain with a subpurchaser forces the shipment to the subpurchaser to be delayed and the subpurchaser to renegotiate his deal, possibly at a higher price, through no fault of his own. Moreover, an interpretation of Sec. 2-705 that would allow a seller in a rising market to stop transit of the goods and resell them to the subpurchaser at a higher price would allow the seller, merely by claiming a fear of buyer insolvency, to deprive the buyer of the benefit of an advantageous bargain with the subpurchaser. Such a result would be both inequitable and inconsistent with the goals of protection of the contractual rights of all the parties
 
 
 [2]
 Glendale also contends that it is inequitable to establish a rule under which a buyer, without the seller's knowledge, can cut off the seller's right to stop shipment by merely shipping the goods to a third party. While it is true that a buyer can cut off the seller's right to collect by reshipment, to do so he has to sell the goods to someone else and give up the right to receive and use them. If he only has them shipped to himself at another location, his action would be a mere diversion which would not rise to the status of a reshipment, U.C.C. Sec. 2-705 Official Comment 3, and would not cut off the seller's rights